THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOE WICKERSHAM and CARTER WICKERSHAM, | CASE NO. C13-01778-JCC |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| STATE OF WASHINGTON, WENDY WILLETTE, KING COUNTY, and ROBERT NISHIMURA, | |
| Defendants. | |

This matter comes before the Court on Defendant King County's motion for summary judgment (Dkt. No. 43), supporting declarations (Dkts. No. 44 & 45), Plaintiffs' response (Dkt. No. 48), Defendant's reply (Dkt. No. 50), and a supplemental declaration containing relevant deposition transcripts (Dkt. No. 51).

Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **GRANTS** the motion for the reasons explained herein.

I.      **BACKGROUND**

Plaintiffs, Joe Wickersham ("Joe") and his son Carter, sue the State of Washington, King County, and two individual officials, Wendy Willette and Robert Nishimura, for events that

1  occurred August 14, 2010. Dkt. No. 13, p. 2. Plaintiffs allege that Willette entered their property

2  without authorization, shot Plaintiffs' dog, prevented Plaintiffs from aiding the wounded dog,

3  and was verbally abusive. Dkt. No. 1, pp. 7–8. The same claims, save shooting the dog, are

4  alleged against Nishimura. *Id.* After a previous order granting Defendants' motion to dismiss in

5  part, Plaintiffs' remaining claims against King County are trespass, outrage, and negligent

6  infliction of emotional distress. Dkt. No. 39; Dkt. No. 43, pp. 1–2. Plaintiffs sue King County

7  based on the actions of Nishimura, a King County Sheriff's deputy. Dkt. No. 43, pp. 1–2.

8       Plaintiffs concede that "[t]he most substantive and egregious injuries [they] suffered . . .

9  resulted from the shooting of their dog by Willette." Dkt. No. 48, p. 1. Yet Plaintiffs maintain

10 that Nishimura committed three torts: (1) trespass, (2) outrage, and (3) negligent infliction of

11 emotional distress. Both Plaintiffs assert all three claims, though the allegations deal particularly

12 with alleged harm to Joe Wickersham. Dkt. No. 1, p. 8.

13 **A.  Relevant Facts**

14      On August 14, 2010, Willette went to investigate a possible fishing violation at Plaintiffs'

15 home, and called Nishimura for backup. Dkt. No. 44, p. 3 (Nishimura's Police Report). Willette

16 had shot Plaintiffs' dog as a response to what she perceived as an attack, and the Plaintiffs were

17 incredibly upset. *Id.* Nishimura described the situation upon his arrival as "very tense" and "very

18 aggressive." Dkt. No. 31, Ex. 3 (deposition transcript). Nishimura was confronted by Joe

19 Wickersham, who Nishimura describes as confrontational and emotional. *Id.* Nishimura

20 remembers Joe as smelling of alcohol, behaving erratically, and at one point yelling, "I'm an

21 attorney!"[1] *Id.* In his efforts to address the situation, Nishimura indicates that he instructed Joe to

---

[1] Defendant King County directs the Court's attention to disciplinary hearings in which Plaintiff Joe Wickersham had his bar license suspended for three years, *In re Disciplinary Proceeding Against Wickersham*, 178 Wash.2d 653

1   remain seated so as not to go into his house and retrieve a weapon; at one point when Joe tried to

2   stand, it is possible that Nishimura told him to "sit the fuck down." *Id.*, Dkt. No. 50, p. 1.

3   　　　　Joe Wickersham denies drinking prior to the incident. Dkt. No. 47, p. 10 (Joe

4   Wickersham deposition). Joe also recalls Nishimura using numerous profanities[2] immediately

5   upon entering Plaintiffs' property. *Id.* at 16. Joe indicates that Nishimura "got right in my face"

6   during the encounter. *Id.* at 30. According to Joe, Nishimura seemed under the impression that

7   Joe had shot his own dog; once that misconception was clarified, Nishimura attempted to help

8   get the dog to a veterinarian. *Id.* at 16. Joe characterizes the exchange between himself and

9   
10  Nishimura as follows:

11  　　　　So he – he – my son pulled up the driveway and was leaving. [Nishimura] started
    　　　　to walk to his car. I think about – about the only communication I had with him
12  　　　　was I said, I don't appreciate the way you talked to me in front of my son. And
    　　　　that's as he was walking to his car. That was pretty much the long and short of it
13  　　　　between he and I because he had me intimidated, like I said, acting like I did
    　　　　something wrong.
14  

15  　　　　*Id.* Joe acknowledges that Nishimura never grabbed or touched him. *Id.* at 30.

16  **II.   DISCUSSION**

17  　　　　**A.   Standard on Summary Judgment**

18  　　　　"The court shall grant summary judgment if the movant shows that there is no genuine

19  
20  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21  Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v.*

22  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there

23  is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at

24  

25  _____

26  (2013). There is, however, no indication that Defendants Willette or Nishimura were aware of Wickersham's history
    of bar discipline.
    [2] Referred to throughout the pleadings as "F bombs."

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 3

49. At the summary-judgment stage, evidence must be viewed in the light most favorable to the

nonmoving party, and all justifiable inferences must be drawn in the non-movant's favor. *See*

*Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

**B.     Trespass**

Under Washington law, "[a] person is liable for trespass if he or she intentionally (1)

enters or causes another person or a thing to enter land in the possession of another, or (2)

remains on the land, or (3) fails to remove from the land a thing that he or she is under a duty to

remove." *Brutsche v. City of Kent*, 164 Wash. 2d 664, 673 (2008).[3] While neither party disputes

that Nishimura intentionally entered Plaintiffs' land, his status as a police officer legitimizes the

entry.

Law enforcement officers with "legitimate business" are authorized to enter the curtilage

areas surrounding a home, as Nishimura did. *State v. Seagull*, 95 Wash. 2d 989, 902 (Wash.

1981). An actionable trespass only arises if an officer exercises her privilege to enter another's

land "in an unreasonable manner" and causes harm. *Brutsche*, 164 Wash. 2d at 671–75 (citing

*Goldsby v. Stewart*, 158 Wash. 39 (1930)). As the United States Supreme Court has held, it is

"silly" to suggest that the police commit torts simply by entering property for legitimate

investigative reasons. *Georgia v. Randolph*, 547 U.S. 103, 118 (2006).

Plaintiffs wrongfully assume that whether or not Nishimura was trespassing depends

upon whether he conducted himself in a "reasonably respectful" manner. Dkt. No. 48, pp. 3–4.[4]

---

[3] Briefly, neither party provided the Court with an appropriate legal standard for trespass. Defendants cited *Wallace v. Lewis County*, 134 Wn. App. 1 (2006) which dealt with continuing intentional trespass from Defendants' tire disposal practices rather than from a personal entry onto property. Plaintiffs cite *Winter v. Mackner* to provide their standard for trespass, though the case never provides any such definition but rather deals with the duty of care owed to trespassers. 68 Wash. 2d 943, 945 (1966).

[4] Plaintiffs later incorrectly interpret case law when they state "[u]nder *State v. Seagull*, Deputy Nishimura had the obligation to be 'reasonably respectful'" when entering their property. Dkt. No. 48, p. 6 (emphasis added). As

Plaintiffs cite no authority for the position that a police officer otherwise lawfully on a citizen's property "becomes a trespasser if the property owner feels the officer was disrespectful." Dkt. No. 50, p. 7. Such a principle, if true, would create the illogical result of converting countless police investigations into actionable trespass.

Even viewing the facts in the light most favorable to the Plaintiffs, Nishimura's conduct did not constitute a trespass. Nishimura had the right to enter onto Plaintiffs' property in response to Willette's call for back-up. Even if Nishimura used profanity and asked Joe to "sit the fuck down," this was not unreasonable. Law enforcement officers sometimes use profane language tactically. Dkt. No. 50, p. 3. Furthermore, Plaintiffs do not allege that Nishimura caused any damage to their property. Nishimura's entry onto Plaintiffs' property, even making all justifiable inferences in Plaintiffs' favor, was privileged, reasonable, and did not cause harm. There is not enough evidence for a reasonable jury to return a verdict for the Plaintiffs on their trespass claim. As such, Defendant King County's motion for summary judgment as to the trespass count is **GRANTED.**

### C.    Outrage

In Washington, the elements of outrage are (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) an actual result to the plaintiff of severe emotional distress. *Rice v. Janovich*, 109 Wash. 2d 48, 61 (1987). Even making all justifiable inferences in Plaintiffs' favor, there is not enough evidence for a reasonable jury to return a verdict for the Plaintiffs on an outrage claim. Liability is only triggered where a defendant's conduct is "[s]o outrageous in character, and so extreme in degree, as to go beyond

---

Defendant says, "[Nishimura's] language could be viewed as distasteful or unnecessary in hindsight," but this does not render Nishimura's behavior legally unreasonable. Dkt. No. 50, p. 6.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 5

1    all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

2    civilized community." *Grimsby v. Samson*, 85 Wash. 2d 52, 59 (1975) (internal citation omitted).

3        Plaintiffs set forth no evidence that Nishimura intentionally inflicted emotional distress

4    on either Joe or Carter Wickersham. And the Court finds that no reasonable jury would deem the

5    officer's conduct "atrocious" or "utterly intolerable in a civilized community." Nishimura's

6    behavior, even if Plaintiffs were not intoxicated and were justifiably shaken by their dog having

7    been shot, was still within the bounds of the behavior expected of a sheriff's deputy responding

8    to a call for back-up. The cases cited by Plaintiffs do nothing to demonstrate otherwise.

9    Defendant's motion for summary judgment as to Plaintiffs' outrage claim is hereby **GRANTED**.

10

11        **D.      Negligent Infliction of Emotional Distress**

12        A cause of action for negligence only arises if the defendant owed a duty of care to the

13   plaintiff. *Chambers-Castanes v. King County*, 100 Wash. 2d 275, 284 (1983). Generally

14   speaking, the actions of law enforcement are not subject to negligence liability. *Keates v. City of

15   Vancouver*, 73 Wn. App. 257, 267 (Wash. Ct. App. 1994). The public duty doctrine establishes

16   that a public entity, such as the King County Sheriff's Department, does not have a duty of care

17   to the general public: "a duty to all is a duty to no one." *Osborn v. Mason County*, 157 Wash. 2d

18   18, 27 (2006) (internal citation omitted). Plaintiffs focus especially on the extent of their stress to

19   assert a claim for negligent infliction of emotional distress. Yet Plaintiffs' allegations do nothing

20   to defeat the legal presumption that Defendants Nishimura and King County did not owe them a

21   duty of care. "[A] public entity—like any other defendant—is liable for negligence only if it has

22   a statutory or common law duty of care." *Osborn*, 157 Wash. 2d at 27–28.

23        The only fact that could feasibly create a duty of care is that Nishimura provided Carter

24   Wickersham with directions to a veterinarian for the injured dog. Plaintiffs appear to argue that

25

26

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 6

1    this affirmative step created a "special relationship" between Nishimura and the Plaintiffs such

2    that a negligence claim is actionable. The "special relationship" exception applies if "the

3    interactions of the plaintiff and a public official are such that the official assumes a duty to use

4    due care for that plaintiff's benefit in particular." *Dowell v. City of Lynnwood*, No. C06-1240-

5    JCC, 2007 WL 4365793, at *6 (W.D. Wash. Dec. 11, 2007). This requires "(1) . . .privity or

6    direct contact between the public official and the injured plaintiff; (2) the public official must

7    give express assurances; and (3) the plaintiff must justifiably rely on those assurances." *Id.*

8    Though Nishimura's apparent attempts to be helpful may have exceeded the ordinary response of

9    an officer in similar circumstances, Plaintiffs present no evidence from which the Court could

10   infer that Nishimura provided "express assurances" that he would help the dog.

11

12            Even making all justifiable inferences in Plaintiffs' favor, there is not enough evidence

13   for a reasonable jury to return a verdict for the Plaintiffs on a negligence claim. Nishimura—and,

14   by extension, Defendant King County—did not owe Plaintiffs a duty of care. As such, Defendant

15   King County's motion for summary judgment as to negligent infliction of emotional distress is

16   **GRANTED.**

17

18   **III.    CONCLUSION**

19

20            For the foregoing reasons, Defendant King County's motion for summary judgment (Dkt.

21   No. 43) is **GRANTED.**

22   //

23   //

24   //

25   //

26   //

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 7

1    DATED this 11th day of December 2014.

2

3

4

5

6

7

8                                         John C. Coughenour
                                          UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE - 8