THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOE WICKERSHAM and CARTER WICKERSHAM,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE OF WASHINGTON and WENDY WILLETTE,<br><br>    Defendants. | CASE NO. C13-01778-JCC<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART, GRANTING KING COUNTY MOTION TO WITHDRAW, AND REMANDING TO STATE COURT |

This matter comes before the Court on the motion of Defendants State of Washington and Wendy Willette for summary judgment (Dkt. No. 52), Plaintiffs' response and supporting documents (Dkts. No. 59–62), Defendant's reply (Dkt. No. 67), and Plaintiffs' surreply and motion to strike (Dkt. No. 69). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary, hereby **GRANTS** the motion in part and **REMANDS** the remaining state law claims to state court.

I.  BACKGROUND

**A.  Procedural Background**

Plaintiffs, Joe Wickersham ("Joe") and his son Carter, sue the State of Washington and Washington Department of Fish and Wildlife Officer Wendy Willette due to an encounter on August 14, 2010. Dkt. No. 13, p. 2. Plaintiffs allege that Willette entered their property without authorization, shot Plaintiffs' dog, prevented Plaintiffs from aiding the wounded dog, pointed her gun at Joe, and was verbally abusive. Dkt. No. 1, pp. 7–8. A King County Sheriff's Deputy, Robert Nishimura, responded to a call for backup from Willette; based on that interaction, Plaintiffs also sued Nishimura and King County. *See* Dkt. No. 1. Though Defendants King

County and Robert Nishimura joined in the motion for summary judgment currently before the Court (*see* Dkt. No. 57), Plaintiffs' claims against King County and Robert Nishimura have since been dismissed. Dkt. No. 58. As such, the Court hereby **GRANTS** Defendant King County's motion to withdraw (Dkt. No. 63) from its joinder of the summary judgment motion of Defendants Washington State and Willette.

Plaintiffs' complaint raises seven remaining causes of action against Officer Willette and, by extension, the State of Washington: (1) a 42 U.S.C. § 1983 claim based on alleged violations of Plaintiffs' federal constitutional rights,[1] (2) trespass, (3) negligent infliction of emotional distress, (4) outrage, (5) conversion of chattels, (6) general negligence, and (7) assault. Dkt. No. 1 at pp. 4–5. Additionally, Plaintiffs raise an eighth claim solely against the State of Washington: (8) negligent training and supervision of Officer Willette. *Id.*[2]

Defendants Willette and the State of Washington move for summary judgment on (1) Plaintiffs' § 1983 claim and the state law claims of (2) trespass, (3) negligent infliction of emotional distress, and (4) outrage. Dkt. No. 52. (5) Conversion of chattels and (6) general negligence were not addressed until Defendants submitted their reply. Dkt. No. 67. Plaintiffs' claims for (7) assault and (8) negligent training have not yet been addressed by the parties.

**B.  Relevant Facts**

---

[1] The Court reads Plaintiffs' vague allegation that their Fourth, Fifth, and Fourteenth Amendment rights were violated as a basis for their § 1983 claim, not as a separate cause of action. *See* Dkt. No. 1 p. 5. Plaintiffs' complaint suggests that, by virtue of committing the state law violations they allege, Officer Willette also violated the Fourth, Fifth, and Fourteenth Amendments and "since Officer Willette. . . deprived Plaintiffs Joe Wickersham and Carter Wickersham of these rights under the color of state law, [she is] liable to them for civil rights violations pursuant to 42 U.S.C. § 1983." *Id.* A § 1983 action only arises for violations of federal rights, not state rights. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

[2] Claims for false imprisonment and false arrest were dismissed by this Court as time-barred. Dkt. No. 39. Plaintiffs' § 1983 claims were dismissed for improper service as to Defendants King County and Robert Nishimura, but not as to the State of Washington or Officer Willette. *Id.*

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 2

The parties give conflicting accounts of the events on August 14, 2010.

1. Officer Willette's Report

According to Officer Willette, while out on patrol, she spotted a woman fishing off a dock across from the Lake Desire Access Area which is owned by the Department of Fish and Wildlife. Dkt. No. 51, Ex. 1, p. 2 ("Willette Incident Report"). Willette then drove around to what she estimated to be the driveway associated with the dock in order to check for the woman's fishing license, but reported that "all of the driveways are very winding and wooded, making it difficult to see which house they are associated with." Willette Incident Report at 2. Willette was in uniform at the time. *Id.* Willette parked her patrol vehicle near a house and walked to the shore. *Id.* Upon arrival, Willette was able to see the dock, and a fishing pole on it, but no woman. *Id.* She then proceeded to look for the woman at the house and property nearby.

Around the house, Willette did not notice a fence or signs designating who owned what property, nor did she see a posted "no trespassing" sign. Willette Incident Report at 2. Willette heard a man yelling heatedly. *Id.* She walked up the stairs of the property to the house and announced her presence. *Id.* The man's yelling continued. *Id.* Willette knocked loudly on the back door of the home and again announced her presence, unacknowledged. *Id.* Then, Willette yelled "Hello, Police! Pay attention!" *Id.* After this third announcement, Plaintiff Joe Wickersham looked out the window and responded, "Police? Oh, ok." *Id.*[3]

A few seconds later, a large Doberman—weighing seventy or eighty pounds in Willette's estimation—appeared and ran quickly down a set of stairs towards her. Willette Incident Report

---

[3] Officer Willette's deposition taken October 10, 204 provides the same description of events. Dkt. No. 51, Ex. 2, pp. 54–56.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 3

at 2. The dog wore a shock collar and bore its teeth in what Willette perceived as an aggressive manner. *Id.* Willette yelled to Joe to secure his dog, but the dog approached her within two or three seconds. *Id.* Willette reports:

> "Before I was able to get the last word out, the dog was right on top of me and made no attempt to slow its attack. . . I felt that the dog was going to attack me. I drew my issued duty pistol and fired two rounds into the dog's neck from about three feet away, which stopped the attack." *Id.*

According to Willette, this was a technique she had been trained to perform to respond to approaching threats. *Id.* The dog turned away and headed towards the house after being shot; it was not killed immediately but required veterinary attention. *Id.*

Officer Willette then walked to another side of the house with her gun drawn. <u>Willette Incident Report</u> at 2. Joe Wickersham had not appeared from inside the house in response to the noise. *Id.* Willette knocked on the front door and announced, "Police." *Id.* at 3. Joe then slowly opened the front door with his hands open, demonstrating that he had no weapons. *Id.* Joe said "Don't shoot me." *Id.* Willette explained to Joe that she had shot his dog because it attempted to attack her, which Joe disagreed with. *Id.* Joe's eyes were watery and red, and his voice shaky while he slurred his words. *Id.* Throughout their interaction, Willette recalls Joe having dramatic mood shifts. *Id.* Joe smelled strongly of alcohol.[4] *Id.* Joe reacted strongly to messages he heard from her portable radio; though Willette indicated over radio that Joe was *not* in custody, the dispatchers misheard her and the misunderstanding startled Joe, who yelled "I'm not in custody!" *Id.*

---

[4] While Defendants Robert Nishimura and King County have been dismissed from this case, evidence presented by Nishimura and considered by the Court corroborates Officer Willette's perception of the event. Nishimura also recalled Joe Wickersham behaving erratically, smelling of alcohol, slurring his words, and having red, watery eyes. *See* Dkt. No. 58, pp. 2–3.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 4

Joe's son, Plaintiff Carter Wickersham, appeared at about that time. <u>Willette Incident Report</u> at 3. Willette indicates that she then asked for Carter's help in aiding the dog, which he agreed to do. *Id.* Shortly after that, King County Sheriff's Deputy Robert Nishimura arrived as backup. *Id.* While Nishimura and Joe spoke, Willette reports a tense exchange in which Joe stated that Willette shot the dog three times. *Id.* at 4. Willette responded that she had shot the dog twice and that "he could count the number of bullets in my gun to prove it." *Id.* Joe then became upset, saying he "knew lawyers" and accused Willette of trying to kill his dog. *Id.* Willette reports:

> "I yelled at Wickersham that I was not standing in a bullet proof vest, wearing twenty pounds of gear, in 95 degree heat to take his shit. I told him I was trying to help his fucking dog and that he was keeping me from doing that. I explained that if he continued to speak lies and to hinder my progress, he was going to jail for obstruction." *Id.*

Willette and Nishimura gave Carter directions to an animal hospital, and drove there to meet the Wickershams and the dog. <u>Willette Incident Report</u> at 4. They did not see the Wickershams there, as the dog was treated at another hospital. *Id.*

2. <u>The Wickershams' Report</u>

The Wickershams describe the events of August 14, 2010 differently.

First of all, Plaintiffs' responsive briefing insistently argues that Officer Willette did *not* see a woman fishing on a dock. Dkt. No. 62, pp. 2, 6, 7, 14, 15, 16.[5] Plaintiffs' apparently-clairvoyant arguments are not only contradicted by Willette's own testimony, but lack support by

---

[5] Plaintiffs' arguments include the following: (1)"Officer Willette saw absolutely no one fishing," (2)"[a]fter clearly seeing no one fishing, Officer Willette further. . . walk[s] down to the Wickershams' dock-where, of course, she still sees no one fishing," (3) references to the woman fishing as "this imaginary woman" and "this phantom woman," (4) "no one was fishing," (5) "[Willette] did not see anyone fishing," (6) "[Willette] still couldn't see anyone fishing anywhere," (7) "Officer Willette pretty much went on a wild goose chase" because "[she] clearly saw that no one was fishing or anywhere near the lakefront," and, finally (8) "she could see no one was actively fishing."

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 5

admissible evidence. While there may be a dispute as to whether Officer Willette saw a woman fishing from a dock on Lake Desire, the Court finds that this is not a material dispute for the purposes of this summary judgment motion: Plaintiffs' repetitions, without evidence or support, do nothing to forward their argument.

Joe Wickersham describes August 14, 2010 as a peaceful day spent with his son, working on his computer, drinking coffee and sunbathing. Dkt. No. 59, pp. 1–3. At approximately 1:30 p.m. Joe asked Carter to retrieve a file from Joe's office, and Carter left. *Id.* at 3. Joe indicates that he was on the phone with a friend when he heard "a crazed woman screaming at the top of her lungs" for him to "get the fuck out here now!" *Id.* This exchange was apparently overheard by the friend on the other line of the phone. *Id.* Joe heard his dog barking, not growling. *Id.* Joe heard three gun shots rather than two, and indicates that he was "listening very closely." *Id.* Joe further indicates that "at no time did the woman represent herself in any way to be law enforcement," contrary to Officer Willette's testimony. *Id.*

Joe describes an additional interaction between himself and Officer Willette which Willette does not report: that upon first coming face-to-face with Willette she screamed at him to drop his phone, repeatedly yelling "drop it!" Dkt. No. 59, p. 4. It is at this time that Joe recalls Officer Willette first identifying herself as a law enforcement officer. *Id.* He further indicates that, though he is blind, he has "a very little bit of blurred peripheral vision out of the corner of my left eye" and "could tell she had her gun pointed straight at me." *Id.*

Joe denies drinking prior to the incident. Dkt. No. 47, p. 10. He recalls offering to take a portable breath test to prove that he was not intoxicated. Dkt. No. 59, p. 4. Carter also indicates that Joe had not been drinking. Dkt. No. 60, p. 6.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 6

Joe's recollection of the events involves many instances of profanity used by Officer Willette: a fact which, to a degree, she does not dispute. *See* Dkt. No. 59; Dkt. No. 51, Ex. 2, p. 101 (acknowledging that the use of profanity by law enforcement can be "tactical").

According to the Wickershams, the Kent animal hospital recommended by Deputy Nishimura was closed on the weekends and so when Carter took their dog there, he was forced to drive an additional 30 minutes to another location. Dkt. No. 59, p. 5; Dkt. No. 60, p. 6. Upon finding an open treatment facility, the dog went into surgery immediately. Dkt. No. 60, p. 6. The dog died about a month later, and while the Wickershams did not have an autopsy performed on her, Carter claims, "I am pretty sure the shooting led to, or hastened, [her] untimely death." *Id.*

## II. DISCUSSION

### A. Standard on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 49. At the summary-judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the non-movant's favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011). Facts or declarations made in support of, or opposition to, a motion for summary judgment must be based on personal knowledge and otherwise admissible in evidence. Fed. R. Civ. P. 56(c)(4).

Federal Rule of Civil Procedure 56(a) provides that the party moving for summary

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 7

judgment must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." As the Court declines to retain supplemental jurisdiction over Plaintiffs' seven remaining state law claims, it does not analyze whether any of those claims would survive summary judgment based on the pleadings before it.

### B. Qualified Immunity

Defendants argue that Willette is shielded from § 1983 liability for money damages by federal qualified immunity. State qualified immunity has not been asserted.[6] *See* Dkts. No. 62, 67. A state official may not be held liable for money damages unless he or she violated a "clearly established" federal statutory or constitutional right. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). A law is "clearly established" if a reasonable officer would have known, at the time of the alleged conduct, that her actions were illegal. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court presumes Willette to be shielded from liability under § 1983 unless Plaintiffs demonstrate that her actions violated a "clearly established" federal law. *Moran v. State*, 147 F.3d 839, 844 (9th Cir. 1998). Qualified immunity is broadly defined: "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... [I]f officers of reasonable competence could disagree on th[e] issue [whether or not a specific action was constitutional], immunity should be recognized." *Moran v. State of Wash.*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Plaintiffs reject the application of qualified immunity, and argue that Willette is liable under 42 U.S.C. § 1983 for violating clearly established law under the Fourth Amendment. Dkt.

---

[6] The judicially-created state doctrine of qualified immunity requires a different analysis. *See Guffey v.* State, 103 Wash. 2d 114 (1984); *Staats v.* Brown, 139 Wash. 2d 757, 778–780 (2000). The Court notes that it is unlikely to be granted in an assault context, *see Staats*, 139 Wash. 2d at 780, or a negligent supervision context, *see Savage v. State*, 127 Wash. 2d 434 (1995).

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 8

No. 62, p. 23. However, much of Plaintiffs' argument depends on their assumptions that Officer Willette either (1) entered their property to investigate a fishing license without reasonable suspicion or (2) conducted an unreasonable search or seizure while there. First, as the Court has already discussed, Plaintiffs' suggestion that Officer Willette lacked the requisite suspicion to conduct an investigative search is meritless and lacks admissible support. *See supra* Part I(B)(2).

Second, none of the cases cited by Plaintiffs establish that Willette committed an unreasonable seizure. In assessing whether or not a seizure occurred, the Court considers "all the circumstances surrounding the encounter" to determine whether "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (internal quotations omitted). Plaintiffs cite no authority to establish that an officer with a valid presence on a person's property unreasonably seizes that person by responding to threats to her safety and erratic behavior. Furthermore, to adopt Plaintiffs' argument would illogically render many police responses to threatening or tense circumstances into constitutionally-recognizable Fourth Amendment claims. It appears that Plaintiffs are resuscitating their previously-dismissed false imprisonment claim, based primarily on Nishimura's instructions that Joe "sit the fuck down," in setting forth this argument. *See* Dkt. No. 39. This does not establish that Officer Willette seized either Plaintiff.

Officer Willette is shielded by qualified immunity and, as such, may not be held liable under 42 U.S.C. § 1983. Plaintiffs' cause of action under § 1983 is hereby **DISMISSED.**

Dismissal of Plaintiffs' § 1983 claim eliminates the only claim for which this Court possessed original jurisdiction. In such circumstances, "the balance of factors will weigh toward

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 9

remanding any remaining pendent state claims to state court." *Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 205 (9th Cir.1991); *see also* 28 U.S.C. § 1367(c)(3). Where substantial judicial resources have already been committed and remanding would cause a duplication of effort, the district court may properly retain jurisdiction over state law claims. *See Schneider v. TRW, Inc.,* 938 F.2d 986, 994–95 (9th Cir.1991). While a close call, the Court finds that substantial judicial resources have not been committed to this matter. As such, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims, which are hereby **REMANDED** to the King County Superior Court.

III.  CONCLUSION

For the foregoing reasons, the motion for summary judgment (Dkt. No. 52) is **GRANTED** in part. Defendant King County's motion to withdraw in its joinder (Dkt. No. 63) is **GRANTED**. Plaintiffs' remaining state law claims of trespass, negligent infliction of emotional distress, outrage, negligence, conversion of chattels, assault, and negligent supervision and training are hereby **REMANDED**. The Clerk of Court is directed to remand this case to the King County Superior Court.

//

//

//

//

//

//

//

//

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT IN PART,
GRANTING KING COUNTY MOTION TO
WITHDRAW, AND REMANDING TO STATE
COURT
PAGE - 10

//

DATED this 15th day of January 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART, GRANTING KING COUNTY MOTION TO WITHDRAW, AND REMANDING TO STATE COURT
PAGE - 11